## JAMES *et al.* v. LITTLE *et al.*

The court committed no error in dismissing the petition upon the general demurrer thereto.

FEBRUARY 15, 1911.

Action on bond. Before Judge Hammond. Richmond superior court. September 18, 1909.

The plaintiffs in error brought suit on the bond of the administrator of the estate of their father, making, among others, substantially the following allegations: In the inventory of the estate there was no personalty, and the realty referred to therein which belonged to the estate was certain described property in the city of Augusta. An order for its sale was obtained by the administrator, and it was advertised to be sold thereunder. "But before the sale said administrator proposed to petitioners to permit him to purchase the property at his own sale, as it would be to the best interest of both himself and petitioners for him to purchase said land; and if petitioners would allow him to bid in the property at his sale as administrator, he would see that they should be paid, as heirs and distributees of said estate, the sum of $600.00 each, clear of any debts due by the estate; that he wanted to pur-

chase said lands as cheap as possible, but if the same should be run up on him by other bidders at the sale, he would make the property bring $5,000, its true value. That, relying upon the promise of said Little, administrator, and owing to the close and confidential relations existing between them, as brothers and sister —he being the older brother of petitioners—and having full confidence in his promise, by reason of said promise they consented to his proposition to allow him to purchase said property at his own sale, and petitioners did not even attend the said sale." Armstrong held a deed to the property to secure a debt of $950, and he consented for the full title to the property to be sold, with the understanding that his debt would be paid out of the proceeds. The property was sold by the administrator and he bid it off for $3,190. After the sale Armstrong made a deed to the property to the administrator individually, and the administrator executed a deed to the property to himself individually "and petitioners, at the same time, signed a ratification of the deed of Little, administrator, to Little, individually." On the same day the administrator individually conveyed the property to Armstrong to secure a loan of $3,600 by the latter to the former. Subsequently Armstrong and Little sold part of the property to the City Council of Augusta for $3,700, "said sale being made in the interest of said Little." The balance of the property is worth $2,000, and the title to the same is held by Armstrong to secure a debt due to him by Little. "Petitioners further allege, that, relying on the promise of the said Little, administrator, made before the sale of said property, as aforesaid, they did not attend the administrator's sale of the property, and but for said promise they would have attended the sale, and would have made the said real estate bring its true value, to wit $5,000. That the conduct aforesaid of said administrator therefore chilled the bidding at said administrator's sale, and caused said real estate to sell for less than its true value. . . Petitioners allege that owing to the confidential relations existing between said Little and petitioners, and his failure to carry out his promises aforesaid, which they relied upon, it will be a fraud in law to allow him as administrator to take advantage of them and not account to them, as distributees, for the full value of said real estate. Petitioners allege that said Little as administrator refuses to settle with petitioners for their distributive share

43

in said estate, though often requested so to do." The rents received by Little from the property are sufficient to pay all debts due by the estate. Little is insolvent. "That said Little, administrator, should be made to account with petitioners for the true value of said real estate, and upon a proper accounting they would be entitled to the sum of $2,000." An additional paragraph of the petition is set out in the opinion. The prayers of the petition were as follows: "First, an accounting of said administrator with your petitioners, as distributees of the estate of Wm. R. Little deceased, for the true value of the lands of said estate, passing into the hands of said administrator. Second, for a judgment against said Andrew J. Little, as principal, on his bond as administrator, and against the National Surety Company, security on said bond, for the sum of $2,000 due petitioners, or for such sum as, upon a just accounting, may be found due them;" and for process and general relief. An amendment to the petition was as follows: "And now come the plaintiffs, and by leave of the court amend their petition as follows: 1. Paragraph 10 of said petition, by adding at the end thereof the following: And said City Council of Augusta was an innocent purchaser of said land, and petitioners are, therefore, unable to set aside said sale. 2. To amend paragraph 13 of said petition by adding at the end thereof the following: That when petitioners ratified said sale they did so believing said Little, administrator, would carry out his promises aforesaid, made to petitioners before the sale; in that said administrator should be allowed to purchase said property at his own sale for their benefit and the estate, and they had no idea whatever that said administrator was seeking to purchase said property for his own personal interest; nor did they have knowledge that said Little would convey said property to said Armstrong, as aforesaid, as his own property, but believed that he would hold said property for the benefit of the estate of which he was administrator. That said Little, administrator, should be held responsible for the full value of all the property passing into his hands as administrator, as a trust fund for the heirs-at-law of said estate, and should also account for the rents and profits thereof." To the order of the court sustaining a demurrer to the petition, and dismissing the same, the plaintiffs excepted.

*H. C. Roney,* for plaintiffs. *W. H. Fleming,* for defendants.

HOLDEN, J. (After stating the facts.) The heirs were not content to permit the estate to pass through an administration in the usual way, by allowing the property sold by the administrator and the proceeds of the estate distributed among the heirs after payment of debts and expenses of administration; but they made a private agreement with the administrator, by virtue of which he was permitted to bid on the property at his own sale and buy it in, with the promise on his part that "he would see that they should be paid, as heirs and distributees of said estate, the sum of $600 each." This promise was that of the administrator in his individual capacity, and not one in his capacity as administrator. The administrator could not bind the estate for the fulfilment of such a promise, and he was not liable on his bond for a failure to perform it. The bond of the administrator was conditioned on the discharge of his duties as administrator, and a breach of this promise was no breach of his bond. Hence a refusal to perform his part of this contract with the other heirs involved no violation of his duty as administrator, and such refusal gave no right of action to the other heirs to require the administrator, in the settlement of the estate, to account for the real value of the property sold, which is alleged to be greater than the amount at which the administrator bid it off at his sale of it. After the administrator bid off the property and, as administrator, made a deed to himself as an individual, the other heirs, the plaintiffs, ratified in writing this deed. This placed in the administrator as an individual the legal title to the property as far as the heirs were concerned. A purchase by an administrator at his own sale is voidable and not void, and the heirs, as far as they are concerned, may at their election affirm or disaffirm it. Counsel for plaintiffs in error cite authorities to the effect that a purchase by an administrator at his own sale is illegal and prima facie fraudulent, and, however the formal title may be, he holds the property under the implied undertaking which the law casts upon him; but in this case the plaintiffs agreed before the sale that the administrator might purchase thereat, and also ratified his purchase after he had bought at his own sale, thereby making the purchase valid as far as the plaintiffs are concerned. When the plaintiffs ratified the sale they knew at what price the administrator bought it; and if they elected to ratify the sale, their reliance on the promise of the administrator

as an individual to see that they were paid $600 each as their distributive shares, and the refusal of the administrator to carry out this promise, certainly gives the heirs no right of action on the bond of the administrator for the full value of the property, alleged to be greater than the amount for which it was bid off by the administrator. This conduct of the plaintiffs, vesting a valid legal title, as far as they are concerned, in the administrator individually, placed it in the power of the administrator to convey, as far as the plaintiffs are concerned, a valid legal title to others, which the petition alleges the defendant did. Under such circumstances the plaintiffs could not hold the administrator, in his capacity as administrator, and the sureties on his bond, in a suit thereon, liable for the real value of the property because the administrator violated his agreement. It is claimed that the agreement by the plaintiffs that the administrator might buy the property at his own sale, and their ratification of his purchase thereat, was void, because the administrator perpetrated a fraud on plaintiffs by representing to them that it would be to the best interest of plaintiffs for the administrator to be allowed to bid on and buy the property, when in fact it was not for their best interest, and by his subsequent refusal to pay them $600 each as their distributive shares; as the defendant, who was a brother of plaintiffs and administrator of the estate, sustained a confidential relation to plaintiffs. The property to be sold was real estate in the city of Augusta, and its value was known, or could have been known, to plaintiffs as well as defendant, as far as disclosed by the petition, and no reason is alleged why the statement of the administrator to plaintiffs that it would be to their interest for him to buy the property could have misled them. But if any fraud by the administrator was perpetrated on plaintiffs, as contended by them, they could not by reason thereof hold the former in his capacity as administrator liable for the market value of the property purchased by him at the sale. What has been said is on the theory that the agreement between plaintiffs and the defendant was that the latter might buy the property for himself individually. The amendment to the petition indicates that it was the agreement between the administrator and plaintiffs that the former should buy the property at the administrator's sale for "their benefit and the estate." It is unnecessary to determine whether the petition, prop-

erly construed, means that the plaintiffs and the administrator agreed that the latter should buy the property for himself or for the heirs or for the estate; because, whatever may have been the agreement in this respect, no right of action exists requiring the administrator to account in the administration of the estate for the full value of the property. After the plaintiffs ratified the deed made by the administrator to himself individually, thereby placing it in the power of the administrator to convey, as far as plaintiffs were concerned, a valid legal title to the property to others, and the administrator did so convey it, certainly this affords a good reason, if there were no other, why the plaintiffs could not thereafter hold the administrator, in his official capacity, and the surety on his bond, liable for the market value of the property so conveyed, even if it was the agreement that the administrator should buy the property for the benefit of the heirs or estate. The petition alleges as follows: "That said Little, after persuading petitioners to allow him to bid at his own sale, and after they had ratified his purchase of said property at his own sale, on account of the promises made by said Little, administrator, before the sale, now refuses to carry out his promise made to them, aforesaid, and declines to settle with them, as distributees, in accordance with his said promise made before the sale, and says that if any settlement is made with him, as administrator, with petitioners as distributees, they must settle on the basis of what he paid for the property at the sale, to wit, the sum of $2,240.00." No complaint is made that the administrator in the administration of the estate will not account to the heirs for the amount at which he bid off the property at the administrator's sale. A proper construction of the allegations and prayers of the petition requires us to hold that the suit is not to require the administrator to account for such amount, or to require an accounting generally, but that the suit is solely to require the administrator to account in the administration of the estate for the market value of the property sold by him at administrator's sale—alleged to be greater than the amount at which he bid it off at said sale. This the plaintiffs, under the allegations of the petition, can not do; and the judgment of the court dismissing the petition on the general demurrer of the administrator and the surety on his bond is

*Affirmed. All the Justices concur.*