In the Matter of the Estate of HUGH GLENN, Deceased.

LUCIE CANTERBURY WICKS and Another, Appellants; UTICA TRUST AND DEPOSIT COMPANY, as Executor, etc., of HUGH GLENN, Deceased, and as Executor, etc., of FANNY ELLEN GLENN, Deceased, Respondent.*

Fourth Department, March 4, 1931.

* Revg. 137 Misc. 237.

*Dunmore, Ferris & Dewey* [*Thayer Burgess* of counsel], for the appellants.

*P. C. J. DeAngelis,* for the respondent.

THOMPSON, J. Decedent bequeathed his wife the use and income for her life of certain bonds aggregating in value the sum of $140,000. The decree finally settling the accounts of the executor, which is the petitioner in this proceeding, provided that it should turn over and deliver these bonds, so bequeathed, to testator's widow upon her giving a bond for the protection of the remaindermen; in failure of which the executor was directed to hold and retain the bonds and dispose of them according to the terms of the will. The widow did not furnish the bond required by the decree but entered into an agreement with the executor that it retain and hold the bonds and dispose of them according to the will; for which, and for rent of a security box, it was to be paid the sum of $200 per year to be taken from income. Upon the death of the widow the executor, upon notice to all of the interested parties, brought this proceeding in the Surrogate's Court, praying that the court determine the compensation to which it might be entitled in the premises, before turning over the bonds to the beneficiaries entitled to them under the will, and the surrogate has allowed it commissions at the rate permitted to trustees by law, based upon the amount of the corpus. In this we think the learned surrogate fell into error.

Upon its petition the executor procured a decree from the surrogate finally settling its accounts as such executor at the close of the usual administrative period. In that proceeding the executor applied for, was awarded and retained full commissions. If the widow, having refused to give the bond, had failed to make the agreement that she did make, it would have been the duty of the executor to have retained the bonds and paid the income therefrom to the widow during her life, for which service, upon a proper application, the Surrogate's Court would have had authority to have allowed it commissions on such income so received and disbursed. Obviously the agreement was made to cover just this situation as a computation based upon the income derived from the bonds and the amount of the commissions allowed to executors by law during the period between the death of decedent and the death of the widow, clearly indicates.

A trust cannot be read into this will. The provision for the

widow distinctly provides the procedure to be followed by the executor which is that the bonds be delivered to her; that she retain them and have the income therefrom during her life, and at her death that they be delivered to the remaindermen. Acting within a proper discretion the surrogate made a decree requiring the life beneficiary to give security in order that the remandermen might be protected. The decree did not provide for the setting up of a trust under the will, nor could it. (*Matter of Ziegler*, 168 App. Div. 735, 742.) Nor does it appear that a trust in fact was ever attempted to be established. (Surr. Ct. Act, § 167, as amd. by Laws of 1923, chap. 274.) Upon the failure of the life beneficiary to give such bond, it became the duty of the executor to retain these bonds as such executor, pay the income therefrom to the life beneficiary, and deliver and pay over the bonds or their avails to the remaindermen upon the occasion of the death of the life beneficiary. No trusteeship is involved here and it was the duty of the executor to carry out these provisions of the will, or, if it did not choose to do so, to resign.

" Executors may have imposed upon them by the will, which appoints them, in addition to their ordinary duties as executors, those which otherwise would be distinctively those of a trustee of a trust thereby created; and, if they accept the executorial appointment, the performance of those duties becomes at once a function of, and appertains to their position as executors." (*Matter of Hunt*, 121 App. Div. 96, 102, ROBSON, J.)

The agreement with the widow, as the learned surrogate held, provided ample compensation for the services rendered by the executor in receiving and disbursing the income from the bonds, and the commissions allowed by the surrogate and retained by the executor on the final settlement of its accounts adequately compensated it for its services in retaining the custody of the bonds during the life of the widow and delivering them over to the remaindermen at her death. There is no warrant in law for the allowance of a further compensation.

It is fundamental that double commissions are to be awarded only when the will contemplates a several and separable action in each capacity, and that they are not to be allowed where the will makes no such separation but blends the two duties and commingles them without a severance. It is the duty of an executor to pay legacies in the manner and at the time provided by the will, and it does not change that duty that the payment of the principal is postponed and the income made payable annually in the meantime. A trust duty may thus be imposed upon an executor which thereby becomes and is made a function of his

office. (*McAlpine* v. *Potter*, 126 N. Y. 285; *Johnson* v. *Lawrence*, 95 id. 154; *Laytin* v. *Davidson*, Id. 263.)

The will, the decree, the contract and the circumstances found here fail to establish the existence of a trust.

For these reasons the decree should be reversed, with costs to the appellants against the respondent.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Decree reversed on the law and claim dismissed, with costs to the appellants against the respondent.